# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# ORLANDO DIVISION

**LEONARDO PERRERO,
CHRISTOPHER AELKER, PATRICIA
ANGEL, JEFF ARCHER, YAPRAK
BALKAN, KEITH BARRETT, LESLIE
CEREP, HASAN FAROQ, KEVIN
HAERTLING, TOM HORSFIELD,
JASON HOULE, JOHN KILLIN,
ROBERT KNEER, CHARLES KNOLL,
KAREN LARY, JARED LOOPER, THOMAS
LYNCH, WILLIEM MCWHORTER, JIM
MIDDLETON, DENA MOORE, IVY
MOSS, MARY POORMAN,
DAVID POWERS, LEYNA ROSSI,
and SCOTT STARKEY,**

      **Plaintiffs,**

**v.**                      **CASE NO: 6:16-cv-2144-Orl-41TBS**

**WALT DISNEY PARKS AND RESORTS
U.S., INC.**

      **Defendant.**

_____/

## SECOND AMENDED CLASS ACTION COMPLAINT

Plaintiffs LEONARDO PERRERO, CHRISTOPHER AELKER, PATRICIA

ANGEL, JEFF ARCHER, YAPRAK BALKAN, KEITH BARRETT, LESLIE CEREP,

HASAN FAROQ, KEVIN HAERTLING, TOM HORSFIELD, JASON HOULE, JOHN

KILLIN, ROBERT KNEER, CHARLES KNOLL, KAREN LARY, JARED LOOPER,

THOMAS LYNCH, WILLIAM MCWHORTER, JIM MIDDLETON, DENA MOORE,

IVY MOSS, MARY POORMAN, DAVID POWERS, LEYNA ROSSI, and SCOTT

STARKEY (hereinafter "Plaintiffs") and LEONARDO PERRERO on behalf of the  all

other similarly situated, by and through undersigned counsel, file their Second Amended Complaint Class Action Complaint against Defendant, WALT DISNEY PARKS AND RESORTS U.S., INC. (hereinafter "Defendant"), and in support of their claims state as follows:

<u>**JURISDICTION AND VENUE**</u>

1.      This is an action for damages under Section 1981 the Civil Rights Act of 1866 ("Section 1981", 42 U.S.C. § 1981 *et seq.*) for unlawful discrimination on the basis of national origin based on theories of termination and failure to hire.

2.      This Court has subject matter jurisdiction under 28 U.S.C. § 1331 and 1355.

3.      Venue is proper in the Middle District of Florida under 28 U.S.C. § 1391, because all of the events giving rise to these claims occurred in Orange County, Florida.

<u>**PARTIES**</u>

4.      The named Plaintiff and class representative, LEONARDO PERRERO (hereinafter "Plaintiff") is an American citizen and adult resident of Longwood, Florida, who was employed by Defendant as an Application Developer until his termination in 2015.

5.      Plaintiff CHRISTOPHER AELKER is an American citizen, and is an adult resident of Longwood, Florida, who was employed by Defendant as a Technical Support Specialist until his termination in 2015.

6.      Plaintiff PATRICIA ANGEL is an American citizen adult resident of Orlando, Florida, who was employed by Defendant as a Senior Analyst until her termination in 2015.

7.      Plaintiff JEFF ARCHER is an adult resident of Orlando, Florida, and also an American, who was employed by Defendant as a POS Sustainment Manager until his termination in 2015.

8.      Plaintiff YAPRAK BALKAN is an adult resident of Sandy Springs, Georgia, and also an American, who was employed by Defendant as a Systems Analyst until her termination in 2015.

9.      Plaintiff KEITH BARRETT is an adult resident of Celebration, Florida, and also an American, who was employed by Defendant as a Senior Information Technology Analyst until his termination in 2015

10.     Plaintiff HASAN FAROQ is an adult resident of Coppell, Texas, who was employed by Defendant as a Senior Data Administrator until his termination in 2015.

11.     Plaintiff KEVIN HAERTLING is an adult resident of Orlando, Florida, who was employed by Defendant as an Information Technology Analyst until his termination in 2015.

12.     LESLIE CEREP, also an American, was employed by Defendant as a Data Warehouse Analyst until her termination in 2015.

13.     Plaintiff TOM HORSFIELD is an adult resident of Orlando, Florida, also an American, was employed by Defendant as a Performance Test Analyst until his termination in 2015.

14.     Plaintiff JASON HOULE is an adult resident of Springfield, Massachusetts, also an American, who was employed by Defendant as a Programmer Associate until his termination in 2015.

15.     Plaintiff JOHN KILLIN is an adult resident of Lake City, Florida, also an American, who was employed by Defendant as an Information Technology Specialist until his termination in 2015.

16.     Plaintiff ROBERT KNEER is an adult resident of Windermere, Florida, also an American, who was employed by Defendant as a Manager of Technology until his termination in 2015.

17.     Plaintiff CHARLES KNOLL is an adult resident of Orlando, Florida, also an American, who was employed by Defendant as an Application Specialist until his termination in 2015.

18.     Plaintiff KAREN LARY is an adult resident of Orlando, Florida, also an American, who was employed by Defendant as a Senior Technical Support Specialist until her termination in 2015.

19.     Plaintiff JARED LOOPER is an adult resident of Kissimmee, Florida, also an American. who was employed by Defendant as a Senior Business Analyst until his termination in 2015.

20.     Plaintiff THOMAS LYNCH is an adult resident of Orlando, Florida, also an American, who was employed by Defendant as a Technical Architect Specialist until his termination in 2015.

21.     Plaintiff WILLIEM MCWHORTER is an adult resident of Davenport, Florida, also an American, who was employed by Defendant as a Quality Assurance and Test Specialist until his termination in 2015.

22.     Plaintiff JIM MIDDLETON is an adult resident of Orlando, Florida, also an American, who was employed by Defendant as a Manager of Technology until his termination in 2015.

23.     Plaintiff DENA MOORE is an adult resident of Kissimmee, Florida, also an American, who was employed by Defendant as an Information Technology Developer and Support Specialist until her termination in 2015.

24.     Plaintiff IVY MOSS is an adult resident of Clermont Florida, also an American, who was employed by Defendant as an Application Developer II until her termination in 2015

25.     Plaintiff DAVID PASKINS is an adult resident of Clermont, Florida, also an American, who was employed by Defendant as a Problem Manager until his termination in 2015.

26.     Plaintiff MARY POORMAN is an adult resident of Orlando, Florida, also an American, who was employed by Defendant as a Technical Support Specialist until her constructive discharge in 2015.

27.     Plaintiff DAVID POWERS is an adult resident of Winter Garden, Florida, also an American, who was employed by Defendant as a Principal Database Administrator until his termination in 2015.

28.     Plaintiff LEYNA ROSSI is an adult resident of Winter Garden, Florida, also an American, who was employed by Defendant as a Senior Support Analyst until her termination in 2015.

29.     Plaintiff SCOTT STARKEY is an adult resident of Orlando, Florida, also an American, who was employed by Defendant as a Senior Database Developer until his termination in 2015.

30.     Defendant is a Florida corporation with its principal place of business in Lake Buena Vista, Florida. Defendant operates an amusement park and resort in Lake Buena Vista, in Orange County, Florida. Defendant is the employer of the replacement workers and the former American workers set forth above.

## GENERAL ALLEGATIONS

31.     All conditions precedent have been satisfied, or they have been waived.  In fact, Section 42 U.S.C. 1981 has no administrative exhaustion requirements.

32.     Plaintiffs have hired the undersigned attorneys and agreed to pay them a fee.

33.     Plaintiffs request a jury trial for all issues so triable.

34.     Plaintiffs are members of a protected class of persons Section 1981 as American Citizens.  Named Plaintiffs are American-born and/or naturalized American citizens.

35.     Plaintiffs were employees whose rights to contract for employment, and enjoy the benefits of employment, are protected under Section 1981.

36.     Under Section 1981, Defendant is an employer prohibited from interfering with any employee's contractual right to enjoy the same benefits, privileges, terms, and conditions of employment that all other employees of Defendant otherwise enjoy, regardless of the employee's of national origin.

6

37.     At all times material hereto, Defendant acted with malice and reckless disregard for Plaintiffs' protected rights under Section 1981.

**FACTS**

38.     Plaintiffs worked in Defendant's administrative offices.

39.     Plaintiffs performed the duties of their positions with Defendant in a satisfactory manner.

40.     In October 2014 Plaintiffs and approximately two-hundred fifty (250)[1] employees were notified by Defendant of their termination to take effect on January 31, 2015. Each of the Named Plaintiffs in this case, LEONARDO PERRERO, CHRISTOPHER AELKER, PATRICIA ANGEL, JEFF ARCHER, YAPRAK BALKAN, KEITH BARRETT, LESLIE CEREP, HASAN FAROQ, KEVIN HAERTLING, TOM HORSFIELD, JASON HOULE, JOHN KILLIN, ROBERT KNEER, CHARLES KNOLL, KAREN LARY, JARED LOOPER, THOMAS LYNCH, WILLIEM MCWHORTER, JIM MIDDLETON, DENA MOORE, IVY MOSS, MARY POORMAN, DAVID POWERS, LEYNA ROSSI, and SCOTT STARKEY, were fired ***on the same day.***

41.     Plaintiffs were informed by Defendant that they would be responsible for training the new employees who would then replace them. As stated by Bob Iger, the Chief Executive Officer of Defendant, this was "insulting."

---

[1] There are actually 148 putative class members (by Defendant's own count, *see* hearing transcript, p. 26, lines 24-25).

42.    Plaintiffs were also informed the group of new employees to be trained would be a combination of individuals either brought to the United States from India and of Indian national original or working remotely outside of the United States from India.

43.    By the end of October 2014, Plaintiffs' replacements, all of which were of Indian National Origin, were brought in under the direction and management of Defendant and Plaintiffs began training them.

44.    Each new trainee was of Indian national origin.

45.    Between October 2014 and January 31, 2015, Plaintiffs applied for employment in several available positions posted by Defendant.

46.    Plaintiffs were well-qualified for these positions, but were denied further employment with Defendant.

47.    On or about January 31, 2015, Defendant terminated the employment of Plaintiffs based solely on their national origin and race, replacing them with Indian nationals.

## **MEMORANDUM OF LAW**

## I.    **LEGAL STANDARD FOR DISMISSAL.**

To withstand a Rule 12(b)(6) dismissal motion, a complaint must merely contain factual allegations that are "enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The complaint therefore must plead "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (*quoting Twombly*, 550 U.S. at 570).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (alteration, citations & internal quotation marks omitted). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (*quoting Twombly*, 550 U.S. at 557 (alteration in original)). According to the United States Supreme Court at this stage in the litigation, a court must accept the facts alleged in the complaint as true and draw all reasonable inferences therefrom in the plaintiff's favor. *See Twombly*, 550 U.S. at 555-56. A complaint should not be dismissed simply because the court is doubtful that the plaintiff will be able to prove the necessary facts. *See Twombly*, 550 U.S. at 555-56.

As demonstrated below, Plaintiffs have gone to great lengths to meet the standards promulgated in *Twombly*, and to ensure they followed the Court's instructions in its last Motion to Dismiss. Plaintiffs respectfully submit that they have satisfied both *Twombly*, and cured the deffencies pointed out by this Honorable Court in the last version of the First Amended Complaint. Thus, this version of the complaint should withstand any 12(b) attack Defendant may try to utilize as Plaintiffs' specific allegations, supported in law and fact, as demonstrated below, must be accepted as true.

## II.    CLASS ACTION ALLEGATIONS

1.    ***Rule 23(b)(2) -- Case Maintainable Under this Rule***. This action is properly maintained as a class action pursuant to subsection (b)(2) of Rule 23 in that

defendant Defendant has acted or refused to act on grounds which are generally applicable to the class and subclass, in particular as to their national origin, thereby making appropriate injunctive relief and corresponding declaratory relief with respect to the class and subclass as a whole.

2. ***Rule 23(b)(3) -- Case Also Maintainable Under this Rule***. Individual class and subclass members have minimal interest in individually maintaining or controlling separate actions in this case; no other litigation has been commenced asserting the interests and claims advanced in this case; interests of fairness, efficiency, and consistency of outcome will be served by concentrating the litigation of the class and subclass members' claims in this particular forum and action; this case will be manageable as a class action, and far more easily manageable than the multiplicity of individual actions in different jurisdictions that would result if this case is not permitted to proceed as a class action.

3. Thus, Plaintiff PERRERO brings this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of the following Class and Sub-Class:

**TERMINATION CLASS:**
**All American-born or naturalized American citizen former employees of Defendant who were issued notices of termination in October 2014, and who were subsequently terminated in January 2015, and replaced by an Indian national within the applicable statute of limitations.**

**FAILURE TO HIRE SUB-CLASS:**
**All American-born or naturalized American citizen former employees of Defendant who were issued notices of termination in October 2014, and who were subsequently terminated in January 2015, and not re-hired because of they were American citizens rather than Indian citizens within the applicable statute of limitations. This class specifically excludes any**

**American workers Defendant's records show were re-hired following the termination of the individuals in the Termination Class.**

4.  <u>Numerosity</u>: The Class is so numerous that joinder of all Class members is impracticable. On information and belief, hundreds or thousands of individuals satisfy the definition of the Class.

5.  <u>Typicality</u>: Plaintiff Perrero's claims are typical of the Class. The adverse employment action suffered by Plaintiff, specifically termination of American-born and/or naturalized American citizens in favor of younger male replacements of Indian national origin, was uniform in its application to all Class Members.

6.  <u>Adequacy</u>: Plaintiff Perrero will fairly and adequately protect the interests of the putative Class members, has no interests antagonistic to the class, and has retained counsel experienced in complex class action litigation.

7.  <u>Commonality</u>: Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class, including but not limited to:

    (a) Whether Class Members are employees whose rights to contract for employment, and enjoy the benefits of employment, are protected under Section 1981.

    (b) Whether Defendant is an employer prohibited from interfering with any employee's contractual right to enjoy the same benefits, privileges, terms, and conditions of employment that all other employees of Defendant otherwise enjoy, regardless of the employee's of national origin.

11

(c) Whether Defendant took adverse and unlawful employment action against Class Members in violation of Section 1981 by terminating their employment.

(d) Whether Defendant took adverse and unlawful employment action against Class Members in violation of Section 1981 by failing to hire them and replacing them with people of Indian Nation Origin.

(e) Whether (and the extent to which) other relief should be granted based on Defendant's failure to comply with Section 1981.

8.      Class members do not have an interest in pursuing separate individual actions against Defendant, as the amount of each Class Member's individual claim is relatively small compared to the expense and burden of individual prosecution. Class certification also will obviate the need for unduly duplicative litigation that might result in inconsistent judgments concerning Defendant's practices. Moreover, management of this action as a class action will not present any likely difficulties. In the interests of justice and judicial efficiency, it would be desirable to concentrate the litigation of all Class Member's claims in a single action.

9.      As to all claims below, Plaintiff Perrero seeks certification of the classes described above.  In addition, Plaintiff Perrero requests that this Court order notices be issued to all such individuals informing them of their right to opt into this litigation pursuant to that statute to the extent allowed by Rule 23(c)(2) of the Federal Rules of Civil Procedure.

10.     The names and addresses of the Putative Class Members and are available from Defendant's records.

## COUNT I -CLASS CLAIM– 42 U.S.C. § 1981 VIOLATION
### (NATIONAL ORIGIN DISCRIMINATION – TERMINATION)

11.     Plaintiffs are American born and/or naturalized American citizens and are members of a protected class of persons under Section 1981.

12.     In order to plead, not prove, a prima facie case for discriminatory termination under Section 1981, the plaintiffs need only show the following things: (1) they each a member of a protected class; (2) they were each qualified for the job; (3) they each suffered an adverse employment action, and; (4) they each were replaced by someone outside the protected class.

### *Plaintiffs Have Met Element One for Pleading Discriminatory Termination*

13.     As to element one, it undisputed that Plaintiffs LEONARDO PERRERO, CHRISTOPHER AELKER, PATRICIA ANGEL, JEFF ARCHER, YAPRAK BALKAN, KEITH BARRETT, LESLIE CEREP, HASAN FAROQ, KEVIN HAERTLING, TOM HORSFIELD, JASON HOULE, JOHN KILLIN, ROBERT KNEER, CHARLES KNOLL, KAREN LARY, JARED LOOPER, THOMAS LYNCH, WILLIEM MCWHORTER, JIM MIDDLETON, DENA MOORE, IVY MOSS, MARY POORMAN, DAVID POWERS, LEYNA ROSSI, and SCOTT STARKEY are all in a protected class because they are American citizens, thereby satisfying element one.

### *Plaintiffs Have Met Element Two for Pleading Discriminatory Termination*

14.     As to element two, each of the above named Plaintiffs were qualified to do their job because they had already been hired for and were doing the job, in some cases

since Disney first opened. (*See* Doc. 32, Declaration of Mary Poorman, "I began my employment with Defendant as a Desktop support personnel in Orlando, Florida in June of 1991. I actually began working for Disney originally in 1976. I continued working for Disney until my termination in January of 2015, at a time which I was just three weeks shy of 39th year anniversary. The termination was devastating and absolutely broke my heart.")

15.    Disney has never claimed Ms. Poorman was not qualified for her job. In fact, Disney has not once, throughout this entire litigation, ever disputed that ***any*** of the Plaintiffs were not qualified to do their job. Not in its Motion to Dismiss, not in its response to Plaintiff's Motion for Class Certification, nor in any of its discovery responses. Instead, when responding to discovery Disney gave the same canned response as to all Named Plaintiffs, clearly demonstrating Plaintiffs were qualified for their job and not fired for some inability to do the job:

Disney Parks objects to Interrogatory No. 4 on the grounds that it is vague and ambiguous, particularly as to what is meant by "participated in the decision," overly broad, unduly burdensome, and calls for information not relevant to any claim or defense. Disney Parks further objects to Interrogatory No. 4 on the grounds that the decision made was not to "discharge" Plaintiff. Instead, as part of the reorganization, the maintenance functions performed by Plaintiff were outsourced to an outside commercial vendor who hired its own employees and made its own staffing decisions. Employees whose positions were affected by the IT reorganization were provided opportunities to look for other positions within Disney Parks or its affiliates. If they were unable to locate another position, the effective date of the layoff was on or about January 31, 2015.

(*See, e.g.,* Exhibit A, Disney Responses to Plaintiff Leonardo Perrero's interrogatories, p. 4).

14

16.     Nothing Disney has said, or can say, demonstrates that Plaintiffs were unable or unqualified for their jobs. <u>Thus, Plaintiffs have satisfied element two for discriminatory termination in violation of Section 1981.</u>

### *Plaintiffs Have Met Element Three for Pleading Discriminatory Termination*

17.     It is undisputed that every Plaintiff presently in this lawsuit was fired by Disney on the same day, or thereabouts, January of 2015.  Thus, Defendant cannot and has not disputed Plaintiffs have suffered the ultimate adverse employment action: termination, <u>thereby satisfying element three of their prima facie case.</u>

### *Plaintiffs Have Met the Fourth Element for Pleading Discriminatory Termination*

18.     It is equally undisputed that persons of Indian National Origin were brought in to replace Plaintiffs.  Obviously, Indian nationals fall outside of the class of American Citizens who were fired.  Once again, Disney does not deny these allegations because it knows they are true.  Not once in its Opposition to Plaintiff's Motion for Class Certification does Disney deny that it replaced American citizens with Indian nationals.  And one need look no further than all of the declarations filed in support of Plaintiffs' Motion for Class Certification to see that, in fact, is exactly what happened, American Citizens were replaced with Indian workers:  (Decl. of Leonardo Perrero ¶¶ 8, 10); (Decl. of Leonardo Perrero ¶¶ 14-15, 19); (Decl. of Mary Poorman ¶ 10, 15); Decl. of Patricia Angel ¶¶ 11-12); (Decl. of Scott Starkey ¶¶ 11-12); (Decl. of Leyna Rossi ¶ 12-13); Doc. 17, ¶¶ 44-45, 47) (Decl. of Leonardo Perrero, ¶¶8, 14-15, 21; (Decl. of Scott Starkey ¶¶ 11-12); (Decl. of Mary Poorman ¶ 10); (Decl. of Patricia Angel ¶¶ 11-12); (Decl. of Leyna Rossi ¶¶ 9, 12-13).

19.     Thus, Plaintiffs have <u>satisfied element three of their prima facie case.</u>

15

20.     As a direct and proximate result of Defendant's willful and reckless discrimination against Plaintiffs, Plaintiffs have suffered and will continue to experience pain and suffering, mental anguish, emotional distress, and loss of earnings and other employment benefits and job opportunities.

21.     Plaintiffs were injured due to Defendant's violations of Section 1981, for which Plaintiffs are entitled to legal and injunctive relief.

**WHEREFORE**, Plaintiff Perrero on behalf of the Class, demands:

(a)     A jury trial on all issues so triable;

(b)     That process issue and that this Court take jurisdiction over the case;

(c)     Judgment against Defendant, permanently enjoining Defendant from future violations of Section 1981, and remedying all lost income, raises, promotions, and other benefits of which Plaintiffs were unlawfully deprived;

(d)     Compensatory damages, including emotional distress, allowable at law;

(e)     Punitive damages;

(f)     Reinstatement of Plaintiffs to a position comparable to their prior position, or in the alternative, front pay;

(g)     Prejudgment interest on all monetary recovery obtained;

(h)     All costs and attorney's fees incurred in prosecuting these claims; and

(i)     For such further relief as this Court deems just and equitable.

## COUNT II - CLASS CLAIM– 42 U.S.C. § 1981 VIOLATION
## (NATIONAL ORIGIN DISCRIMINATION - FAILURE TO HIRE)

22.     Here, Plaintiffs have properly pled and sufficiently established a prima facie case of unlawful discrimination by demonstrating that: (1) they were a member of a protected class (American Citizens); (2) they each applied and were qualified for a position for which the employer was accepting applications (see below table for examples of specific names and jobs applied for which Plaintiffs under this Count were turned down despite their qualifications); (3) despite their qualifications, they were not hired (see below table for specific examples); and (4) the position remained open or was filled by another person outside of her protected class (see table below with specific examples as to each person/element pleading a failure to hire under Count II.).

### *Plaintiffs Met the First Element for Pleading Discriminatory Failure to Hire*

23.     Plaintiffs are American born and/or naturalized American citizens and are members of a protected class of persons under Section 1981.

### *Plaintiffs Also Meet Elements Two, Three, and Four*
### *As Demonstrated by Below Information*

| Name | National Origin | Position Applied for but not hired | Qualifications | Hired? | National Origin of Person who filled position? |
|---|---|---|---|---|---|
| Keith Barrett | American | Submitted 16 application for various position; Defendant would announce position was | Over 10 years leadership experience with The Walt Disney Company managing high-availability | Interviewed for one position; Not Hired. | Indian National |

| | | filled but then would repost position and system would not allow current employees to re-apply | revenue services and projects handling millions of transactions, and another 10 years prior with Fortune 500s and startups building and managing IT projects, Staff, Disaster Recovery, Network Infrastructure, Information Security, Regulatory Compliance, Data Centers and Software Products & Services. | | |
|---|---|---|---|---|---|
| Kevin Haertling | American | Applied for every position he was qualified for; received no interviews | 28.5 years experience, helped write cast-information security awareness implemented by Disney and used on over 12,000 employees | Not Hired | Indian National |
| David Powers | American | Applied for 8 positions two of which he progressed past the first stage but was removed from | Principal Data Architect Employed 2000 – Jan 2015 Direct aspects of Walt Disney Parks & | Not Hired | Indian National |

| | | consideration once hiring manager discovered he was among those terminated in October 2014 | Resorts, Disney Cruise Line and Disney Vacation Club database architecture and engineering for a team. | | |
|---|---|---|---|---|---|
| Leonardo Perrero | American | Applied for approximately 25 positions; received call-backs on 2 positions; received 2 in person interviews | Application Developer Specialist Dates Employed 2011 – 2015 In September 2014, prior to receiving notice that I would be terminated and replaced by someone of Indian national origin, I received the highest performance review which was accompanied by an increase in pay. | Not Hired | Indian National |
| Scott Starkey | American | Applied for approximately 6 positions; offered a few interviews | Data Warehouse Developer Specialist 2008 – Jan 2015 Provided data warehousing solutions and 24/7 support for | Not Hired | Indian National |

| | | | 30 terabyte Teradata data warehouse, with over 600 data integrations, allowing nearly 8,000 Walt Disney Company employees to make informed business decisions. | | |
|---|---|---|---|---|---|
| Leyna Rossi | American | Submitted approximately 20 applications | Application Developer Specialist 2005 – Oct 2013 Develop, maintain, and support systems used through the Walt Disney Resort using SQL, .NET, and related technologies. Analyze code for system testing and debugging. | Not Hired | Indian National |
| Jared Looper | American | Applied for positions through Defendant's portal | Sr. Business Systems Analyst 2012 – Jan 2015 Responsible for reporting the Business | Not Hired | Indian National |

| | | | Sustainment Metrics between the IT departments and our various business units. | | |
|---|---|---|---|---|---|
| Williem McWhorter | American | Applied monthly to positions posted by Defendant | Technical Specialist Information Technology Employed 9 years, Utilize my Quality Service Management expertise to ensure change management and software development processes are effectively implemented. | Not Hired | Indian National |
| Jared Looper | American | Applied for positions through Defendant's portal | Sr. Business Systems Analyst Employed Mar 2012 – Jan 2015 responsible for reporting the Business Sustainment Metrics between the IT departments and our various business units. | Not Hired | Indian National |
| Jim Middleton | American | Applied for positions with Defendant | IT Manager at Walt Disney World | Not Hired | Indian National |

| | | and its affiliates including Walt Disney Parks and Resorts Online, Disney Interactive, and ESPN | EAI (Enterprise Application Integration) / ESB (Enterprise Service Bus), Direct Connect via OTA (OpenTravel Alliance), CRM (Siebel and Force.com). User base exceeds 3,000. | | |
|---|---|---|---|---|---|
| Dena Moore | American | Completed more than 150 applications for Defendant; was interviewed for several positions. Was told during one interview that HR was just going through the motions so they could report they tried to fill the position and would ultimately fill the position with foreign workers from India | Worked for Disney for over 10 years Researching, Designing, Implementing Software development Possess experience in software development, primarily using Agile/Scrum methodology. Successfully worked on the team to developed sustainment ASP.NET, MVC, C#, SQL web applications that allow operations to be managed by the data operations center. | Not Hired | Indian National |

| Ivy Moss | American | Applied for Technical Architect position with Defendant in August 2015 | Application Developer Specialist Company Aug 2013 – Feb 2015 Employment Creating new modules using HTML, HTML5 and JQuery to be platform independent and run on desktop as well as mobile environment. Migrating portal Java applications off vignette servers using Spokes, JAVA, JSP, Jboss, and Tomcat, Maven technologies to run the application locally before moving to Dev. Creating front-end templates for the migrated applications. | Not Hired | Indian National |
|---|---|---|---|---|---|

24.    In October 2014 Plaintiffs and approximately two-hundred fifty (250) employees were notified by Defendant of their termination to take effect on January 31, 2015.

23

25.     Defendant told Plaintiffs that they were eligible to be rehired and, as demonstrated above, many of the Plaintiffs re-applied.  Those Americans listed above were not re-hired despite their qualifications while the positions were filled by a person from India.

26.     Between October 2014 and January 31, 2015, Plaintiffs applied for employment in several available positions posted by Defendant.

27.     Plaintiffs were well-qualified for these positions, as demonstrated above by their experience and tenure, but were denied further employment with Defendant.

28.     Defendant failed to rehire Plaintiffs based solely on their national origin and instead hired Indian nationals.

29.     The foregoing actions constitute unlawful discrimination, in violation of Section 1981.

30.     Defendant's actions were willful and done with malice.

31.     As a direct and proximate result of Defendant's willful and reckless discrimination against Plaintiffs, Plaintiffs have suffered and will continue to experience pain and suffering, mental anguish, emotional distress, and loss of earnings and other employment benefits and job opportunities.

32.     Plaintiffs were injured due to Defendant's violations of Section 1981, for which Plaintiffs are entitled to legal and injunctive relief.

**WHEREFORE**, Plaintiffs demand:

(a)     A jury trial on all issues so triable;

(b)     That process issue and that this Court take jurisdiction over the case;

(c)     Judgment against Defendant, permanently enjoining Defendant from future violations of Section 1981, and remedying all lost income, raises, promotions, and other benefits of which Plaintiffs were unlawfully deprived;

24

(d)    Compensatory damages, including emotional distress, allowable at law;

(e)    Punitive damages;

(f)    Reinstatement of Plaintiffs to a position comparable to their prior position, or in the alternative, front pay;

(g)    Prejudgment interest on all monetary recovery obtained;

(h)    All costs and attorney's fees incurred in prosecuting these claims; and

(i)    For such further relief as this Court deems just and equitable.

## JURY TRIAL DEMAND

Plaintiffs demand trial by jury as to all issues so triable.

Dated this 23rd day of August, 2017.

Respectfully submitted,

_____
**LUIS A. CABASSA**
Florida Bar Number: 0053643
**WENZEL FENTON CABASSA, P.A.**
1110 N. Florida Avenue, Suite 300
Tampa, Florida 33602
Main Number: 813-224-0431
Direct Dial: (813) 379-2565
Facsimile: 813-229-8712
Email: lcabassa@wfclaw.com
Email: twells@ wfclaw.com
**Attorneys for Plaintiffs**

**And**

**SARA BLACKWELL**
Florida Bar No. 09443
**THE BLACKWELL FIRM**
2243 Palm Terrace
Sarasota, Florida, 34321
Main No. 941-961-3046
Email: Sara@theblackwellfirm.com
**Attorney for Plaintiffs**

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on this 23rd day of August, 2017, the foregoing was electronically filed with the Clerk of the Court via the CM/ECF system, which will send a notice of electronic filing to:

Mary Ruth Houston
Glennys Ortega Rubin
Shutts & Bowen LLP
300 South Orange Avenue, Suite 1000
Orlando, FL  32801
Email: grubin@shutts.com
Email: mhouston@shutts.com

Alan E. Schoenfeld, Esquire
WILMER CUTLER PICKERING HALE AND DORR LLP
7 Word Trade Center
250 Greenwich Street
New York, NY 10007
Email: alan.schoenfeld@wilmerhale.com

David W. Ogden, Esquire
WILMER CUTLER PICKERING HALE AND DORR LLP
1875 Pennsylvania Ave. N.W.
Washington, DC 20006
Email: david.ogden@wilmerhale.com

_____

**LUIS A. CABASSA**